JEREMY T. McLAUGHLIN, Plaintiff Below, Appellant,
v.
DOVER DOWNS, INC., a Delaware corporation, KEATING BUILDING CORPORATION, a foreign corporation, OVERHEAD DOOR CORPORATION, a foreign corporation, AUTOMATIC DOOR ENTERPRISES, INC., a foreign corporation, DEL-MAR DOOR SERVICES, INC., a Delaware corporation and MIAMI TESTING LABORATORIES, a foreign business entity, Defendants Below, Appellees.
No. 397, 2008.
Supreme Court of Delaware.
Submitted: February 25, 2009
Decided: May 27, 2009.
Before STEELE, Chief Justice, HOLLAND, BERGER, JACOBS and RIDGELY, Justices.

ORDER
MYRON T. STEELE, Chief Justice.
This 27th day of May 2009, it appears to the Court that:
(1) Jeremy McLaughlin appeals from a Superior Court order granting summary judgment in favor of all defendants.[1] McLaughlin asserts that the trial judge erred as a matter of law because the existence of genuine issues of material fact prevented summary judgment. We find no merit to McLaughlin's argument and affirm.
(2) On March 10, 2002, McLaughlin, his fiancé, and his fiancé's mother went to Dover Downs Hotel and Casino to attend a bridal expo. They left Dover Downs through an automatic revolving door. His fiancé's mother went through the automatic revolving door first. McLaughlin and his fiancé then entered one of the compartments together, with his fiancé in front of him. McLaughlin testified that the door panel struck him in his back and the back of his head. When he turned to try to figure out what happened, the back panel hit him again, forcing the front panel to hit the front of his head. McLaughlin fell to his knees and somebody helped him out of the compartment. He went to the emergency room at Christiana Hospital for an evaluation. Two days later he saw Dr. James Berlin, where he complained of lower back pain. On July 21, 2003, McLaughlin visited Dr. Berlin a second time after his back pain persisted. McLaughlin also sought care under Dr. Conrad Kink, Jr.
(3) The revolving door at issue is a Series 9300 model. It has three wings, which create three compartments. Horton designed, manufactured, and sold the revolving door to its distributor, Automatic Door Enterprises, which then sold the door to Dover Downs. Del-Mar Door Services provided maintenance and repairs on the door after installation. The revolving door contained three different safety features: (1) a sensor that causes the door to begin rotating when a person approaches; (2) a safety switch located on each edge of the opening that will stop the door if pressed; (3) a "torque limiting device" that limits the amount of force that the door can exert on an immoveable object; and (4) a switch located at the edge of the opening with a sign that indicates pushing the button will slow the door. Decals located on the door itself stated: "AUTOMATIC DOOR KEEP MOVING," "CAUTION AUTOMATIC DOOR," and "AUTOMATIC DOOR PUSH ONLY IN EMERGENCY."[2]
(4) Horton offered two optional safety features: the VistaStop and the FootGuard. The record suggests that these sensors were not installed on the door at Dover Downs because installation on a smaller door would likely cause "the door to stop or slow and constantly cause[] the person to either impede traffic or. . . the person bump into . . . the person in front of them . . . ."
(5) The American National Standards Institute (ANSI) sets guidelines for certain doors that become mandatory when they are adopted into the building code. ANSI did not announce a standard for revolving doors until June 5, 2003, over two years after the installation of the door at issue. The door at Dover Downs met all applicable building codes at the time of installation.
(6) On February 16, 2002, Ellen Jenkins, a guest at the hotel, fell inside the revolving door. Nobody witnessed this incident but a hotel valet saw Ms. Jenkins on the ground inside the compartment of the revolving door as the door was hitting her back. The Dover Downs Security Incident Report states that the door was moving too fast and had pushed her down.[3] On February 26, 2002, after the Jenkins incident, Del-Mar serviced the door and found it to be working properly, within the manufacturers' specifications. On April 10, 2002, after the McLaughlin incident, Del-Mar Door inspected and serviced the revolving door and found it to be working properly in accordance with the manufacturers' specifications. In October 2006, an inspection of the revolving door demonstrated a speed of 5.1 rpm. The recommended speed is 4 rpm, but the applicable building code permits a speed of up to 7 rpm.
(7) After a failed arbitration and after discovery, all defendants moved for summary judgment. The trial judge granted all motions for summary judgment. This appeal followed.
(8) We affirm the judgment of the Superior Court on the basis of the trial judge's well reasoned opinion. We write briefly, however, to address McLaughlin's argument that the trial judge erred as a matter of law by granting summary judgment without first conducting a Daubert hearing.
(9) Here, the trial judge reviewed the full record and analyzed Dr. Davis' opinions. The trial judge noted that Dr. Davis never conducted his own independent investigation, never inspected the door or its safety features, and had no knowledge of the condition of the door at the time of McLaughlin's accident.[4] Dr. Davis relied solely on arbitration exhibits, the arbitration transcript, photographs, and other products of written discovery. For those reasons, the trial judge concluded that "Dr. Davis' opinions are conclusory assertions, which lack sufficient probative value to raise a genuine issue of material fact."[5]
(10) Given the above findings, which the record fully supports, the trial judge need not have conducted a full Daubert hearing. Furthermore, McLaughlin's counsel should not claim, as he does on appeal, to have been surprised by the trial judge's decision to grant summary judgment without holding a Daubert hearing. McLaughlin's counsel knew that each of the parties had moved for summary judgment and that the trial judge would decide those motions based on whether any genuine issues of material fact existed. Given that McLaughlin's counsel must have reviewed Dr. Davis' affidavit, he would have been on notice that Dr. Davis' opinion had no connection to the facts of the matter at issue. It was not the trial judge's responsibility to supplement Dr. Davis' affidavit through a Daubert hearing.
NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior Court is AFFIRMED.
NOTES
[1] Originally, there were five defendants. Plaintiff filed a motion to dismiss the appeal against defendant Keating Building Corporation. Now, only four defendants are parties to this action: (1) Dover Downs, Inc. (2) Horton, (3) Automatic Door Enterprises, Inc. and (4) Del-Mar Door Services, Inc.
[2] The door was marked with all of the manufacturer's recommended warnings.
[3] Ms. Jenkins was never deposed.
[4] McLaughlin v. Dover Downs, Inc., 2008 WL 2943392, at n.24 (Del. Super. Ct.).
[5] Id. at *11-14.